IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Maurice Pressley, | ) | Civil Action No. 8:16-cv-02716-BHH-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Nancy A. Berryhill, | ) | |
| Acting Commissioner of Social Security,) | | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

**PROCEDURAL HISTORY**

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2]Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3).

On September 5, 2012, Plaintiff filed an application for SSI, alleging an onset of disability date of January 1, 2010. [R. 197–203.] The claim was denied initially on April 15, 2011[R. 97–100], and upon reconsideration on December 5, 2013 [R. 96]. Thereafter, Plaintiff filed a written request for hearing and, on January 8, 2015, appeared with an attorney and testified at a hearing before Administrative Law Judge ("ALJ") Marcus Christ. [R. 25–54.]

The ALJ issued a decision on February 17, 2015, finding Plaintiff not disabled under the Social Security Act ("the Act"). [R. 8–24.] At Step 1,[3] the ALJ found Plaintiff had not engaged in substantial gainful activity since September 5, 2012, the application date. [R. 10, Finding 1.] At Step 2, the ALJ found Plaintiff had severe impairments of fibromyalgia, chronic pain disorder, degenerative disc disease, and opiate dependence. [R. 10, Finding 2.] The ALJ also noted that Plaintiff had non-severe impairments of bipolar disorder, anxiety disorder, depressive disorder, and tibia fracture. [R. 10.] At Step 3, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [R. 11, Finding 3.]

Before addressing Step 4, Plaintiff's ability to perform his past relevant work, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant cannot climb ladders, ropes, or scaffolds; can frequently climb ramps or stairs; can

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

occasionally stoop, crouch, kneel, crawl, and perform overhead reaching; and must avoid concentrated exposure to temperature extremes, vibrations, and unprotected heights. The claimant can perform simple routine repetitive tasks. The claimant must be in a low stress job with only occasional changes in the work setting and occasional public interaction.

[R.13, Finding 4.] Based on this RFC, the ALJ determined at Step 4 that Plaintiff was unable to perform any of his past relevant work as a computer technician, mortgage officer, school teacher, or mortgage processor. [R. 18, Finding 5.] However, based on Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. [R. 18, Finding 9.] Accordingly, the ALJ concluded Plaintiff had not been under a disability, as defined in the Act, since September 5, 2012, the date the application was filed. [R. 19, Finding 10.]

Plaintiff requested Appeals Council review of the ALJ's decision, and on June 10, 2016, the Appeals Council declined. [R. 1–3.] Plaintiff filed the instant action for judicial review on August 3, 2016. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends that errors by the ALJ require the decision to be remanded for further administrative proceedings. [See Doc. 15.] Specifically, Plaintiff alleges the ALJ improperly relied on the testimony of the VE by failing to elicit an explanation for the potential conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). [Id. at 18.]

The Commissioner contends the decision is supported by substantial evidence and should be affirmed. [Doc. 16.] The Commissioner contends Plaintiff failed to meet his

burden of providing disability within the meaning of the Act [*id*. at 9], and that the ALJ's failure to resolve a conflict between the VE's testimony and the DOT was harmless and would not affect the outcome of this case [*id*. at 10].

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the

4

Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was

5

appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).    Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).    On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.    *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").    After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.    *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).    A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[4]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[4]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 416.920. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden

shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A. *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* § 416.974–.975.

### B. *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them"). Accordingly, the ALJ must make specific and

well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[5]    20 C.F.R. § 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[6] with the physical and mental demands of the kind

---

[5]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

[6]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1).

of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. § 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. § 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[7]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. § 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not

---

[7]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  § 416.969a(c)(1).

disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy."). The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker*, 889 F.2d at 50. For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The ALJ is required to inquire fully into each relevant issue. *Snyder*, 307 F.2d at 520. The performance of this duty is particularly important when a claimant appears without counsel. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. § 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 416.927(c)(2). An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v.*

*Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

IV.    **Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

V.    **Pain**

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the

claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'" *Id.* (quoting *Craig*, 76 F.3d at 594). Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 416.928. Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth
> Circuit (North Carolina, South Carolina, Maryland, Virginia and

West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:

...

> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious

as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

Although credibility determinations are generally left to the ALJ's discretion, such

determinations should not be sustained if they are based on improper criteria. *Breeden*,

493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

advantage of having heard the testimony firsthand, and ordinarily we may not disturb

credibility findings that are based on a witness's demeanor. But administrative findings

based on oral testimony are not sacrosanct, and if it appears that credibility determinations

are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Conflict between the VE's Testimony and the DOT**

Plaintiff contends that, according to the DOT, none of the jobs identified by the VE

could be performed by someone with the limitations that the ALJ found Plaintiff to have.

[Doc. 15 at 20.] Plaintiff specifically argues that,

> The jobs of a surveillance system monitor and weight tester
> have a GED reasoning level of 3. The job of an address[er]
> has a GED reasoning level of 2. A reasoning level of 3
> indicates that the job requires the person to be able to, "Apply
> commonsense understanding to carry out instructions
> furnished in written, oral, or diagrammatic form. Deal with
> problems involving several concrete variables in or from
> standardized situations." And, a reasoning level of 2 indicates
> that the job requires the person to be able to, "Apply
> commonsense understanding to carry out detailed but
> uninvolved written or oral instructions. Deal with problems
> involving a few concrete variables in or from standardized
> situations." *See* copy attached of DOT definition trailer
> (emphasis added).

[*Id*. at 19–20.] Because the ALJ limited Plaintiff in the RFC to simple, routine, repetitive

work, Plaintiff argues that work requiring him to be able to perform the detailed instruction

required at GED reasoning levels 2 and 3 create a conflict in the VE's testimony that required further inquiry. [*Id.* at 20.]

The Commissioner argues that, although courts within this district have routinely accepted Plaintiff's argument, this Court should reach a different conclusion in this case because: (1) the facts presented readily demonstrate that Plaintiff could perform the minimal mental demands of the jobs identified by the VE; (2) the Fourth Circuit has not ruled on this issue in a precedential opinion; and (3) ample legal authority exists to reach a conclusion in the Commissioner's favor. [Doc. 16 at 10.] The Commissioner argues that this Court should find that the ALJ's failure to identify an apparent conflict between the VE's testimony and the DOT is a harmless error because remand would not change the outcome of this case. [*Id.*] For the reasons explained below, the Court agrees with Plaintiff.

**The ALJ's Decision**

The ALJ found Plaintiff retained the RFC to perform a limited range of sedentary work, restricting him to simple, routine, repetitive tasks. [R. 13.] In response to a hypothetical question containing those restrictions, the VE determined that Plaintiff could perform work as a surveillance system monitor, addresser, and weight tester. [R. 19.] The Court notes that, during the administrative hearing, the ALJ did not ask the VE whether his testimony was consistent with the DOT. [*See* R. 27–54.]

**Discussion**

***Resolving Conflicts Between VE Testimony and the DOT***

Social Security Ruling 00–4p provides that the ALJ "has an affirmative responsibility to ask [a VE] about any possible conflict between [his] evidence and ... the DOT." SSR 00–4P (S.S.A.), 2000 WL 1898704. Accordingly, the ALJ must ask the VE whether his or

18

her testimony conflicts with the DOT, and if so, the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id*. Furthermore, the ALJ must resolve this conflict prior to relying upon the VE's testimony and must explain the resolution of the conflict in his or her decision. *Id.* This Ruling, thus, puts the onus of identifying and obtaining a reasonable explanation of any conflicts between the VE's testimony and the DOT on the ALJ. *Pearson v. Colvin*, 810 F.3d 204, 208 (4th Cir. 2015).

Specifically, an ALJ must first ask the expert if the evidence provided conflicts with the information found in the DOT, and second, if the expert's evidence appears to conflict with the DOT, the ALJ must contain a reasonable explanation for any apparent conflict. *Id.* An ALJ does not fulfill his affirmative duty found in the Ruling merely upon asking the VE whether his or her testimony is consistent with the DOT. *Id.* This is true because an ALJ must investigate facts and develop the record at the hearing; the record is not fully developed if it contains an unresolved conflict between the VE's testimony and the DOT. *Id.* at 210. Likewise, an ALJ fails to fulfill his duty if he ignores an apparent conflict because the expert testified no conflict existed. *Id.*

### The Law in the Fourth Circuit

The Commissioner contends that there appears to be a split among the courts in the Fourth Circuit regarding whether or not a finding by a VE that a person is limited to simple, routine work conflicts with a finding that the person is capable of work at the GED reasoning 2 or 3 level. [Doc. 16 at 12–13.] The Commissioner asks that this Court follow the reasoning of other circuit courts and find no apparent conflict between a GED reasoning level of 2 or 3 and the ability to perform simple, routine, repetitive work,

particularly in this case where no mental impairment[8] was alleged and Plaintiff performed skilled work as a mortgage broker during the relevant period. [*Id.* at 13, *citing Mullis v. Colvin*, No. 1:11CV22, 2014 WL 575722, at *11, n.11 (M.D.N.C. Feb. 11, 2014), *report and recommendation adopted sub nom*; *Mullis v. Colvin*, No. 1:11CV22, 2014 WL 2257188 (M.D.N.C. May 29, 2014) (citing cases)*; Williams v. Astrue*, Civil No. 3:11CV592–MOC–DSC, 2012 WL 4756066, *5 (W.D.N.C. Aug. 27, 2012) ("Because the ALJ limited Plaintiff to unskilled work, and the VE suggested jobs with a reasoning development level of three or lower, there was no conflict between the VE's testimony and the DOT."); *Thacker v. Astrue*, No. 3:11CV246–GCM–DSC, 2011 WL 7154218, at *4 (W.D.N.C. Nov. 28, 2011) ("The requirements of GED reasoning level three are consistent with a limitation to simple, unskilled work. Jobs classified at reasoning level three require the worker to '[a]pply commonsense understanding to carry out instructions....' Thus, reasoning level three is very similar to reasoning levels one and two.") (citation omitted).] Relying on case law from other jurisdictions, the Commissioner argues that a GED reasoning level of 2 or 3 is not inconsistent with Plaintiff's ability to perform only simple

---

[8]While the Commissioner contends Plaintiff does not allege disability due to a mental health impairment, the Court notes that, upon reviewing the medical records, the ALJ found Plaintiff suffered from severe impairments of fibromyalgia, chronic pain disorder, degenerative disc disease and opiate dependence; as well as non-severe impairments of bipolar disorder, anxiety and depressive disorder. [R. 10.] From a review of the ALJ's decision, it is unclear how or if Plaintiff's non-severe impairments were taken into consideration after step 2 of the sequential analysis or in developing the RFC. A failure by the ALJ to consider Plaintiff's impairments in combination is, in and of itself, reversible error. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir.1989); 42 U.S.C. § 423(d)(2)(c). The ALJ is to explain his consideration of the combination of Plaintiff's impairments on remand.

tasks and emphasizes that Plaintiff continued to perform skilled work as a mortgage broker[9] during the period he was allegedly disabled.  [Doc. 16 at 12.]

While district courts within the Fourth Circuit are split on the issue, *see Weaver v. Colvin*, C/A No. 1:10CV582, 2013 WL 3989561, at *11 n. 14 (M.D.N.C. Aug.2, 2013) (collecting cases), both the Fourth Circuit and courts in this district consistently have remanded cases where the DOT and VE testimony are in conflict.  For instance, in *Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015), the Fourth Circuit Court of Appeals reversed the denial of Social Security benefits because the ALJ failed to resolve a conflict between the VE's testimony and the DOT.  The ALJ first asked the VE to advise him if his testimony differed from what was contained in the DOT.  *Id.* at 205.  Then, the ALJ presented the VE with several hypothetical questions containing different limits on work capacity and asked the VE whether the Plaintiff could perform any jobs in the national economy.  *Id*.  The VE testified that the hypothetical individual could perform unskilled and light work; however, the expert did not mention any conflicts between his testimony and the DOT. *Id*. at 206.

In a recent case, *Henderson v. Colvin*, 643 F. App'x 273, 276 (4th Cir. 2016), Plaintiff alleged that the VE's testimony created a possible conflict with the DOT, and the ALJ failed to resolve the apparent conflict. The *Henderson* Court considered the fact that when an expert's testimony apparently conflicts with the DOT substantial evidence exists to affirm a decision only if the ALJ received an explanation from the expert explaining the

---

[9]While the Commissioner contends the Plaintiff worked as a mortgage broker during the time he alleged disability, there is not much detail in the record about what Plaintiff's job entailed. Plaintiff indicated he worked as a mortgage broker from 2009 to 2011 [R. 237], but that he has not worked since he filed for benefits [R. 38.]

conflict, and where the ALJ determines that the explanation was both reasonable and provided a basis for relying upon the expert's testimony. *Id.* at 277. Furthermore, in *Henderson*, the ALJ's decision was reversed because, after finding that there was an apparent conflict between the RFC limiting the individual to one-to-two step instructions and a GED Reasoning Code 2 requiring "the ability to understand detailed instructions," the Court found that the ALJ did not inquire into the apparent conflict. *Id*. In other words, that Court found that a limitation to one-to-two step instructions is an apparent conflict with a reasoning level of 2.

In the District of South Carolina, the Court has repeatedly found that a limitation to simple or routine tasks conflicts with jobs requiring a GED reasoning of 2 or 3 and that such a conflict must be addressed and resolved by the ALJ. For example, in *Shivers v. Colvin*, No. 6:12-3381-SB, 2014 WL 1315183 (D.S.C. March 27, 2014), the Court considered whether an ALJ erred in relying upon an expert's testimony when there was an alleged apparent conflict between the Plaintiff's RFC and the general education development ("GED") levels of three jobs identified by the VE as work Plaintiff could perform. In that case, the Commissioner argued that the Fourth Circuit Court of Appeals had not addressed the correlation between GED levels and a limitation to simple, routine, repetitive tasks. *Id*. at *3. In ruling for the Plaintiff, the *Shivers* Court noted that the District of South Carolina has previously found an existing conflict between a GED reasoning level of 2 and 3 and a limitation to simple, routine, repetitive tasks. *Id*. at *3. Additionally, in that case, the ALJ never discussed with the VE whether Plaintiff's limitation to simple, routine and repetitive tasks was compatible with the identified jobs; thus, the *Shivers* Court found it would be pure speculation to find that the VE considered and resolved that issue. *Id*.

22

In a recent South Carolina district court opinion, the Court adopted the reasoning in the Report and Recommendation, finding that while the specific issue of whether a GED reasoning level of 3 is incompatible with the ability to perform "simple, routine, repetitive tasks" has not been considered by the Fourth Circuit Court of Appeals, other courts in this District have repeatedly remanded for further proceedings in similar situations. *See Christopherson v. Colvin*, No. 6:15-4725-JMC, 2016 WL 7212785 (D.S.C. December 13, 2016) (Report of Magistrate Judge found at 2016 WL 7223283).  In *Christopherson*, the VE had identified jobs with a GED reasoning level of both 2 and 3, as is the case for Plaintiff. *Id.*; *see also Phillips v. Astrue*, C/A No. 3:11–1085–MBS, 2013 WL 353604, at *2 (D.S.C. Jan.29, 2013)(holding that the Commissioner's position that the plaintiff, who was limited to "simple, one to two step tasks," could perform jobs GED reasoning levels of two or three was not substantially justified); *Reid v. Astrue*, C/A No. 6:10–2118–MBS–KFM, 2012 WL 667164, at *12–13 (D.S.C. Feb.8, 2012)(finding an apparent conflict between the plaintiff's ability to perform simple, routine, repetitive tasks and GED reasoning level of three), *adopted by* 2012 WL 663482; *Martin v. Astrue*, C/A No. 6:11–1572–TMC–KFM, 2012 WL 4479280, at *15–16 (finding there was an unexplained potential conflict between GED reasoning levels 2 and 3 and the plaintiff's ability to perform no more than unskilled tasks; short, simple instructions; minimal changes in routine; and limited interaction with the public, supervisors, and co-workers), *adopted by* 2012 WL 4482943 (D.S.C. July 27, 2012); *Patterson v. Astrue*, C/A No. 8:07–1602–HFF–BHH, 2008 WL 2944616, at *5 (D.S.C. July 31, 2008) (noting VE never expressly discussed whether plaintiff's inability to perform more than 1–2 step instructions was compatible with the position requiring at least a reasoning level of two); *Tadlock v. Astrue*, C/A No. 8:06–3610–RBH–BHH, 2008 WL

628591, at * 10 (D.S.C. March 4, 2008)(remanding so that the VE could give testimony as to whether the plaintiff could perform the recommended jobs, which had a reasoning level of 2, considering the claimant's inability to do more than simple and routine work).

### Analysis

In this case, the ALJ limited Plaintiff to sedentary work and simple, routine, repetitive tasks based on Plaintiff's pain symptoms and any arising symptomology from his opiate dependence. [R. 16.] The ALJ reasoned that "claimant's opiate dependence undermines the credibility of the claimant's pain complaints because it is not wholly discernible if the claimant complained of pain to get pain medication, or because he had pain and needed to treat those symptoms, particularly in light of the lack of severe *objective findings*." [R. 17.] The ALJ expressly found that, despite Plaintiff's "alleged fibromyalgia, chronic pain disorder, degenerative disc disease and arising radiculopathy," there were no "objective findings supporting the severity and consistency of his pain."[10] [R.14.] And, in evaluating

---

[10]The Court notes that SSR 12-2p explains how fibromyalgia, which the ALJ found to be a severe impairment for Plaintiff, should be evaluated in disability claims, and it explains that fibromyalgia is "a 'complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months.'" *See Smith v. Colvin*, C/A No. 1:14-4400-RBH, 2016 WL 1089302, at *5 (D.S.C. March 21, 2016). SSR 12-2p provides that fibromyalgia should be considered in the RFC based on a longitudinal record whenever possible because symptoms can wax and wane such that a person may have "bad days and good days." *Id*. Courts have recognized that fibromyalgia symptoms are *entirely subjective*, there is no laboratory test to confirm the presence or severity of it, physical examinations usually yield normal results such as a full range of motion, no joint swelling, normal muscle strength and neurological reactions. *Id*. at *7(emphasis added)*. And, the nature of fibromyalgia is that a person's ability to perform certain tasks or postural maneuvers on one day does not necessarily reflect an ability to perform those on a sustained basis. *Id*. However, as noted in *Smith*, because fibromyalgia symptoms may be entirely subjective, the ALJ should have explained how she factored fibromyalgia subjective pain and fatigue into the RFC determination. In *Smith*, the ALJ relied exclusively on objective medical evidence to evaluate Smith's fibromyalgia as it related to her RFC, and this Court found that the ALJ failed to account

Plaintiff's mental limitations under the listings, the ALJ found that Plaintiff had mild limitations in activities of daily living; moderate limitations in social functioning and in concentration, persistence and pace; and had no episodes of decompensation. [R. 12.]

Upon consideration of the above, as well as the record with the hearing testimony currently before it and given the limitations of the RFC, this Court cannot determine that substantial evidence exists to support the ALJ's decision at Step 5 to rely on the VE's testimony in determining that there were jobs available that Plaintiff could perform.[11] The Court notes that "the VE's failure to identify the alleged conflict between the DOT and the VE's testimony did not absolve the ALJ of his independent duty to consult the DOT and to determine whether the VE's testimony was consistent with its descriptions of the identified jobs."[12] *See Pearson*, 2017 WL 1378197, at *12. At the hearing, the ALJ failed to even inquire into the presence of any inconsistency between the VE's testimony and the DOT. This error was not harmless because there was an apparent conflict between the jobs identified by the VE and the Plaintiff's RFC limitation to simple, routine, repetitive tasks.

_____

for the subjective nature of fibromyalgia and it could not deduce whether the subjective complaints of fibromyalgia pain were considered in determining the RFC. *See id.* Upon review of the ALJ's decision in this case, it appears that this is precisely what happened here, and such was error. Accordingly, this issue should be address by the ALJ on remand.

[11]Additionally, the Court finds that the ALJ's hypothetical to the VE was flawed in that it did not include Plaintiff's moderate limitations in concentration, persistence or pace. *See, Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015). On remand, the ALJ is directed to present Plaintiff's moderate limitations in concentration, persistence or pace to the VE for consideration in determining Plaintiff's RFC.

[12]To the extent the ALJ may have consulted the DOT after hearing the VE's testimony and decided that there was no conflict [R. 19], based on the above case law that appears to be error. And, certainly there was no explanation as to how the ALJ determined that no conflict existed or how it was resolved.

This Court cannot determine that, had the VE been asked about the apparent conflict, the VE would have given a reasonable explanation to explain why Plaintiff could perform those jobs despite the apparent conflict. And, because no apparent conflict was identified, of course the ALJ did not resolve the conflict prior to relying upon the VE's testimony and explain the resolution of the conflict in his decision, as the ALJ was required to do. Accordingly, this Court finds it prudent to remand this case back to the Commissioner to make findings consistent with this decision.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be REVERSED pursuant to sentence four of 42 U.S.C. § 405(g), and the case be REMANDED to the Commissioner for further administrative action consistent with this Report and Recommendation.

**IT IS SO RECOMMENDED**.


s/Jacquelyn D. Austin
United States Magistrate Judge

August 24, 2017
Greenville, South Carolina